## JOHN R. BLACK, Admr., etc.

### v.

## WILSON LUSK.

1. CHANCERY PRACTICE—*whether a decree pro confesso should be as to original bill, for default of answer to amended bill.* Where the matters alleged in an amendment to a bill in chancery are wholly immaterial, there is no error in refusing to enter a decree *pro confesso* as to the original bill, which had been answered, upon taking the amended bill for confessed for want of an answer. The only error in such a case is in allowing a decree *pro confesso* as to the amendment.

2. CONTRACT. Where a party who had given a mortgage to a third party upon real estate, to secure the payment of a portion of the purchase money, and who had afterwards given two other mortgages without release of homestead, agreed with the holder of the two last mortgages, that if he would purchase the first mortgage and note therein secured, the subsequent notes and mortgages should tack to the same, and the premises be sold to satisfy the whole by foreclosure, and the purchase was accordingly made, it was *held*, that the agreement did not constitute a contract, and could not operate to release the mortgagor's homestead exemption as to the two last mortgages.

3. HOMESTEAD—*can be released only according to the statute.* Under the statute the homestead exemption can only be released in the mode therein provided.

4. SAME—*sale of excess or when it exceeds $1000 in value.* Where the answer to a bill to foreclose a mortgage sets up the homestead exemption as a defense, if the bill and the proofs show that the premises are worth more than $1000, a decree may be entered for the sale of so much thereof as exceeds that value; but in the absence of any such averment and proof, or any averment denying the homestead right set up, no decree of sale can be had.

5. The fact that property sought to be sold on execution or under a decree of court is a homestead, is a defense against the proceeding to sell, and it is for the party desiring to sell to take the initiative, if he believes there is an interest beyond the homestead right subject to sale, which he desires to reach.

6. LEGAL TENDER—*U. S. treasury notes.* The act of Congress making United States treasury notes a legal tender is constitutional, whether applied to debts contracted before or after its passage.

7. SUPREME COURT OF UNITED STATES—*decision on constitutionality of legal tender act binding.* The decision of the Supreme Court of the

United States upon the constitutionality of the legal tender act of Congress is of paramount authority, and this court is bound by whatever construction that court places upon the law.

WRIT OF ERROR to the Circuit Court of Warren county; the Hon. CHARLES B. LAWRENCE, Judge, presiding.

This was a bill in chancery, by John R. Black, administrator of the estate of Harvey Black, deceased, against Wilson Lusk, to foreclose three mortgages upon a lot in the city of Monmouth. The opinion of the court states the facts.

Messrs. A. G. & J. M. KIRKPATRICK, for the plaintiff in error.

Mr. A. H. GRIFFITH, for the defendant in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court :

This was a bill in chancery, in the Warren circuit court, to foreclose three mortgages. The first mortgage was executed on the 4th day of February, 1851, to A. C. Harding, to secure the payment of a promissory note of that date, payable ten years after date, for $75, with interest at the rate of ten per cent per annum, and which was assigned to complainant, in his capacity of administrator, on the 12th day of March, 1861. The second mortgage was executed to the intestate on the 13th day of December, 1855, to secure the payment of four promissory notes of that date, for $100 each, payable in two, three, four and five years after date, with interest at the rate of six per cent per annum. And the third mortgage was executed on the 26th day of March, 1858, to the plaintiff, as administrator, to secure the payment of a promissory note of that date, payable on the 1st day of April thereafter, for the sum of $93.31, with interest at the rate of ten per cent per annum.

It is alleged in the bill, and admitted in the answer, that the note secured by the first mortgage was given for the payment of a part of the purchase money for the mortgaged

property. There is no release or waiver of the right of homestead in either mortgage. The bill prays for an account of the amounts due on the several mortgages, and for a foreclosure and sale to satisfy the same.

The defendants answered, admitting the amount due on the first mortgage, tendering $80.18 in gold to pay and satisfy it, and setting up and claiming a homestead in the property as against the other mortgages.

The complainant then amended his bill, by alleging that there was an agreement between himself and the defendant, Wilson Lusk, by which it was agreed that the complainant should purchase the note and mortgage of Harding, and, in consideration thereof, the subsequent notes and mortgages should tack to the same, and the premises be sold to satisfy the whole by foreclosure, and that the complainant, pursuant to this agreement, purchased the Harding note and mortgage; and further, that Lusk, at the time of executing the second and third mortgages, had fraudulently concealed the existence of the mortgage to Harding.

Decree *pro confesso* was taken on the amendment to the bill, and the cause being heard, as is recited in the record, "on original bill, answer thereto, report of master, and the amended bill," the court found that there was due the complainant, upon the mortgages and notes, $86.19, being part of the purchase money for the property mortgaged, and decreed a foreclosure and sale for the payment of the same.

At the next term of the court the master in chancery reported, that defendant, Wilson Lusk, had withdrawn the gold which had been deposited as a tender for the amount due on the first mortgage, and which the court had adjudged insufficient, because it did not include costs, and that he had, since the last term of court, tendered the complainant, in notes commonly called "treasury notes," the full amount of the decree, together with interest and costs, within twenty days from the rendition of the decree, which the complainant refused to accept, for the reasons :

"1st. Because said debt for which said decree was rendered was made and contracted long before said law, making treasury notes a legal tender, was passed, and Congress has no right to impair or violate contracts.

"2d. Because the Congress of the United States has no power, under the constitution, to emit treasury notes and make them a legal tender."

That the defendant therefore placed said treasury notes in the hands of the clerk of the circuit court, for the use of the complainant, he refusing to pay anything else; that complainant refused to receive said treasury notes in payment of the amount due upon the decree, and instructed the master in chancery to proceed to sell the mortgaged property, which he declined to do, but asked the instructions of the court in the premises.

Upon filing this report, the complainant moved the court for an order directing the master in chancery to proceed to sell the mortgaged property pursuant to the decree rendered at the last term; but the court refused to make such order, but, on the contrary, decreed that the clerk retain the treasury notes so deposited with him, to be paid to the complainant, when called for, that the bill be dismissed, and that complainant pay all costs incurred since the deposit was made.

The first objection urged to this record is, that the court below erred in not rendering a decree *pro confesso* as to the original bill, at the time such decree was rendered on the amendment to the bill.

It is a sufficient answer to this objection, that the matter alleged in the amendment is wholly immaterial. Even if the agreement therein alleged was made, it could not in the least affect the issues in the case. The Harding mortgage was on record when the subsequent mortgages were executed, and if the intestate and appellant were, in fact, ignorant of its existence, as it is not alleged that appellee did or said anything to mislead them, or to cause them to be less diligent

in investigating the title than they otherwise would have been, it must be attributed to their own negligence that they did not know what the public records disclosed. Nor are we able to see the essential elements of a contract in this alleged agreement. Appellee had nothing to gain or to lose by the transfer of the Harding mortgage. It neither paid nor reduced the debt. or changed its terms, and the junior mortgages are no less secure since the assignment than they were before. It does not appear that appellee paid more for the notes and mortgage than they were worth. There seems to have been neither benefit to appellee nor loss to appellant by the arrangement. There was no apparent necessity to consult appellee upon the subject. Harding had the unquestioned right to assign his note and mortgage to whomsoever he chose, without regard to the wishes of appellee.

But. aside from this, the statute expressly provides that no release or waiver of homestead shall be valid, unless the same shall be in writing, subscribed by the householder and his wife, if he have one, and acknowledged in the same manner as conveyances of real estate are by law required to be acknowledged.

It is plain, then, that the amendment added nothing to the bill, which required an answer. The only error upon this point was, in allowing a decree *pro confesso* as to the amendment, but this did not prejudice appellant.

It is next insisted that the court below erred in not rendering a decree for the sale of so much of the property as exceeded $1000 in value.

Did it appear, from the record, that the property exceeded $1000 in value, this position would be correct; but we fail to learn from the record what the value of the property was. The bill is for the foreclosure of the mortgages, and is entirely silent upon the question of value. The answer interposes the objection to the foreclosure, that the property is the homestead of the defendants; and this is the only issue it raised. Appellant did not, by his amendment, allege that the property

exceeded in value $1000, or set up any fact showing that it was not a homestead.  When the evidence was heard, nothing appears to have been introduced upon the subject, or, if it was, it is not preserved in the record, and the presumption is in favor of the finding of the court.  So, when the master's report was made, and appellant objected to its confirmation, nothing was urged on the ground that the homestead exceeded in value $1000, but his objections then made are limited to the character of payment made by appellee in satisfaction of the decree.

Had appellant proved that the property exceeded in value $1000, it would have been the duty of the court to have rendered a decree against the excess; or, if appellant had applied to the court to have the question of value determined, it would have been the duty of the court to have caused the necessary inquiry to have been made ; but the court could not assume that the value of the property exceeded $1000, nor was it required, unless applied to for that purpose by appellant, to cause an inquiry to be made in regard to it.

The fact that property sought to be sold on execution or under a decree of court is a homestead, is a defense against the proceeding to sell, and it is for the party desiring the sale to take the initiative, if he believes there is an interest beyond the homestead right subject to sale, which he desires to reach.

The only remaining question relates to the legality of the payment made by appellee to satisfy the amount found due by the decree.  The payment was made in United States treasury notes, popularly known as "greenbacks," and it is argued that the act of Congress making this currency a legal tender for the payment of debts created before the passage of the act, is unconstitutional.  Upon this question the authority of the Supreme Court of the United States is paramount, and we are bound by whatever construction it places upon the law.  Since this case has been pending in this court, that tribunal has rendered two decisions directly upon the question.

In the first case, *Hepburn* v. *Griswold,* 8 Wallace, 603, it was held, by a bare majority of the court, that the act was unconstitutional, so far as it applied to debts previously contracted. In the last case, *Knox* v. *Lee* and *Parker* v. *Davis,* (two cases argued as one) 12 Wallace, 457, it was held, again by a bare majority of the court, overruling *Hepburn* v. *Griswold,* that the act was constitutional when applied to debts previously as well as to those subsequently contracted. This being the last exposition by that court of the law upon the subject, is conclusive upon us. We must, therefore, hold, that the act of Congress in question was constitutional, whether applied to debts previously or subsequently contracted, and that the payment made by appellee was sufficient.

The judgment of the court below is affirmed.

*Judgment affirmed.*